## THOMPSON *v.* NEWTOWN.

The town of N. at a legal meeting in March, 1842, voted to divide the surplus revenue money equally among the resident tax-payers of the town. *Held*, that T., who was a resident of the town at the time, and had been for several years, but who had no visible property, and had never been taxed in the town, or

paid any taxes there, was not a tax-payer within the meaning of the vote, and not entitled to a share of the money.

Selectmen of towns may, in their discretion, purposely omit to tax a resident of a town, of small means, to prevent his gaining a settlement in the town.

APPEAL, from the judgment of a justice of the peace. The action was brought to recover the plaintiff's share of the surplus revenue money in the possession of said town.

It appeared in evidence, that at the annual meeting of the town, March 8th, 1842, the town passed the following vote and resolution : —

"Voted to divide the surplus revenue money among the resident tax-payers now in said town of Newtown." "Resolved, that if any person that is now a resident in this town, and pays taxes, and may remove out of said town, shall receive their proportion of said money, and any person may become of age before the first of April next, shall receive his proportion, if he is taxed. And the selectmen shall make the proportion each one shall have, and commit it to the collector, and he shall pay it over to each individual between the first and eighth day of March next, after deducting each one's taxes therefrom. And no money shall be paid to any person or persons who may move into this town after the eighth day of March, 1842."

The taxes for the year 1842 were assessed by the selectmen in the usual manner, without regard to the surplus money. Some of the residents being taxed for their polls and estate and some for their polls only.

The plaintiff was a resident of said town from 1839 to 1846, and was present and voted at said meeting in 1842. He was not, however, taxed in 1842, nor at any time during his residence in the town, but the selectmen purposely omitted to tax him, lest he should gain a settlement in the town. He was a man with a wife and several children, whom he supported without any aid from the town. He was industrious, but had no visible property that was taxable.

In pursuance of said vote and resolution of the town, the selectmen for that year proportioned all the surplus money among such residents of the town as they understood the vote

to contemplate, being all who were taxed by them that year, whether for the poll only or otherwise, giving to each the sum of $9.35. They also committed the list to the collector to be paid over as the vote directed. The collector followed the directions and paid all the money. But the name of the plaintiff was omitted from the proportion and list, because he was not taxed in the town; and no money was paid to him.

The plaintiff contended, that being a resident of the town and liable to taxation, it was not in the power of the selectmen to deprive him of his share of the money by omitting or neglecting to tax him.

A verdict was taken by consent for the plaintiff, on which judgment is to be entered or the verdict set aside and judgment entered for the defendants according to the opinion of this Court upon the whole case.

*Stanyan,* for the plaintiff.

*Wells* and *Stickney & Tuck,* for the town.

EASTMAN, J.   By virtue of the act of Congress, passed June 23d, 1836, regulating the deposites of the public money, and the act of the Legislature of this State passed January 11th, 1837, providing for the receipt of the public money that might be deposited with this State, a portion of the surplus revenue money, as it is usually termed, was deposited with this State. And by the further act of the Legislature of this State, passed January 13th, 1837, entitled "An act providing for the disposition of the public money of the United States which shall be deposited with this State," the public money so received from the United States was deposited with the several towns of the State. The third section of this act provided, that it should be unlawful for any town to appropriate and expend the money or any part thereof which they should receive on deposit as aforesaid; but the towns might loan the money to such persons and in such sums as they might think proper, and might appropriate the interest accruing on the same to such objects as they should deem expedient. By

the act of July 4th, 1838, this third section was repealed and the towns were authorized to loan the money on good security, in sums not less than twenty-five dollars, or appropriate it to any purpose for which said towns might lawfully raise money. By the act of July 2d, 1841, entitled " An act relating to the public money deposited with the several towns in this State," it was provided, " that from and after the passage of this act, it shall be lawful for any town in this State, at a legal meeting, to make such disposition of the public money deposited with such town by an act entitled, " An act providing for the disposition of the public money of the United States which shall be deposited with this State," passed January 13th, 1837, as by a major vote said town shall determine, any law to the contrary notwithstanding." Such is the history of the legislation upon this subject. By this last act the towns were fully authorized to make such disposition of the money deposited with them as they might deem expedient, and had full power and right to pass the vote and resolution set forth in the case.

The plaintiff claims, that he is one of those embraced within the meaning and intent of the vote and resolution. He sets up no right to the money except what he may have acquired by the action of the town in regard to it. He could maintain no right to it in any other way. And it is conceded, that if he is embraced in the number of those contemplated by the vote of the town, he is entitled to recover. A construction of the vote then is to determine the decision of the case.

As the town had the full control of the money, the most natural course to be taken with it in its distribution, would be such as would subserve the interests of a majority of those dividing it. It is not very probable that they would vote to donate the money to those who did not in any way sustain the burdens of the town. Before passing a vote of that description, they would require some consideration to be advanced or secured. If the intention of the vote and resolution was to divide the money among the residents of the town, it could easily have been so expressed. But such, we think, was not the intention ; nor such the construction to be placed upon the action of the

town from the language used. It was the tax-payers — those who contributed to defray the expenses and taxes of the town, that were to receive the benefit of the money. Thus we find, in the latter part of the resolution, the instruction to the select-men to make out the proportion each one was entitled to and commit it to the collector, and for him* to pay it over to each individual between the 1st and 8th days of March following, *after deducting each one's taxes therefrom;* evidently contem-plating those only who were taxed and should actually pay their taxes.

Was the plaintiff a tax-payer of the town at the time this vote and resolution were passed? It appears that he was a resident of the town from 1839 to 1846, but was not taxed. On the contrary he was intentionally omitted from taxation by the select-men, lest he should gain a settlement in the town, and thereby render the town liable for the support of himself and his family. This course the selectmen, who managed the prudential affairs of the town, had a right to pursue. It is sanctioned by the laws of the State. *Henniker* v. *Weare,* 9 N. H. Rep. 573; *Burton* v. *Wakefield,* 4 N. H. Rep. 47; *Weare* v. *New Boston,* 3 N. H. Rep. 203. And as he had not been taxed at any time before 1842, and has not been since, it seems to us that it cannot be urged with much confidence, that he was omitted that year to prevent his obtaining his share of the surplus money. Besides, the facts in the case disclose no improper conduct on the part of the selectmen. Although he had been liable to be taxed for his poll prior to the vote of the town, and was then, yet he never had been taxed, and consequently had never paid any taxes; nor was he taxed after that. He cannot therefore be regarded as a payer of taxes or tax-payer, for the supposition is contrary to the fact. His liability to be taxed and to pay, cannot control the fact that he did not pay. We think, therefore, that he can-not be included within the intention of the vote and resolution, and that a correct construction of the same will not entitle him to recover in this action. Had the officers of the town acted corruptly, and omitted to tax him to prevent his receiving his proportion of the money, an action might perhaps be sustained

---

Thompson *v.* Newton.

---

against them. But that is not the case before us. Nor do we discover any thing in the facts presented to warrant the bringing of such an action. According to the provisions of the case, the verdict must be set aside, and there must be

*Judgment for the defendants.*